**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JENNIFER MARIE VARGAS,

       Plaintiff,

v.                                        No. CV 18-210 CG

NANCY A. BERRYHILL,
Acting Commissioner for the
Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

     **THIS MATTER** is before the Court on Plaintiff Jennifer Vargas' *Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum* (the "Motion"), (Doc. 22), filed September 6, 2018; Defendant Commissioner Nancy A. Berryhill's *Response to Plaintiff's Motion to Reverse and Remand the Administrative Decision* (the "Response"), (Doc. 24), filed October 18, 2018; and Ms. Vargas' *Reply to Defendant's Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 25), filed November 19, 2018.

     Ms. Vargas filed applications for disability insurance benefits and supplemental security income on February 4, 2015. (Administrative Record "AR" 194, 196). In both of her applications, Ms. Vargas alleged disability beginning November 4, 2014. (AR 194, 196). Ms. Vargas claimed she was limited in her ability to work due to: post-traumatic stress disorder ("PTSD"); anxiety; depression; and chronic back pain. (AR 224).

     Ms. Vargas' applications were denied initially on May 6, 2015 and upon reconsideration on September 16, 2015. (AR 133, 140). At Ms. Vargas' request, (AR 145), a hearing was held on December 19, 2016 before Administrative Law Judge

1

("ALJ") Michael Leppala. (AR 33). Ms. Vargas and Kathleen Mundy, an impartial

vocational expert ("VE"), testified at the hearing and Ms. Vargas was represented by

attorney Feliz Marisol Martone. *Id.*

On April 3, 2017 the ALJ issued his decision, finding Ms. Vargas not disabled at

any time between her protective filing date, November 4, 2014, through the date of his

decision. (AR 25). Ms. Vargas requested review by the Appeals Council, (AR 191-93),

which was denied, (AR 1-4), making the ALJ's opinion the Commissioner's final

decision for purposes of this appeal.

Ms. Vargas, who is now represented by attorney Francesca MacDowell, argues

in her Motion that the ALJ: (1) incorrectly determined she can perform work at a

"medium" exertion level despite her complaints of chronic back pain and vertigo, (Doc.

22 at 3-9, 20-22); (2) erroneously assessed Ms. Vargas' non-exertional limitations

because he did not properly consider the evidence of her excessive crying and anxiety,

*id.* at 10-14, 18-20; (3) did not include, or explain the exclusion of, all of the limitations

assessed by State Agency physicians P. Walls, M.D. and J. McWilliams, Ph.D., *id.* at

14-17; and (4) did not present the VE with a correct residual functional capacity ("RFC")

assessment, rendering reliance on her testimony improper, *id.* at 22-24. The Court has

reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the

Court has meticulously reviewed the administrative record. Because the ALJ did not

commit reversible legal error as alleged by Ms. Vargas, the Court orders that Ms.

Vargas' Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) (2015), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings"[1] of presumptively disabling impairments; or (4) he is unable to perform

_____

1.     20 C.F.R. pt. 404, subpt. P, app. 1.

his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in his past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III. Background

Ms. Vargas claimed she was limited in her ability to work due to: PTSD; anxiety; depression; and chronic back pain. (AR 224). At step one, the ALJ determined that Ms. Vargas had not engaged in substantial gainful activity since November 4, 2014, the alleged disability onset date. (AR 13). At step two, the ALJ found that Ms. Vargas has the following severe impairments: spine disorders; anxiety disorders; personality disorders; and affective disorders. (AR 13-14). At step three, the ALJ determined that none of Ms. Vargas' impairments, solely or in combination, equaled one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (AR 14-16).

At step four, the ALJ found that Ms. Vargas has the RFC to perform a limited range of medium work with the following limitations: she can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can sit for six hours in an eight-hour workday, with normal breaks; she can stand and/or walk for six hours in an eight-hour workday; she is limited to tasks with two- to three-step instructions; she can have occasional and intermittent contact with co-workers and supervisors; and she is limited to seldom contact with the general public. (AR 16).

In formulating Ms. Vargas' RFC, the ALJ stated that he considered Ms. Vargas' symptoms and the extent to which those symptoms can reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling ("SSR") 96-4p. *Id.* The ALJ also stated that he considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p, 96-5p, 96-6p, 06-3p. (AR 17). The ALJ concluded that some of Ms. Vargas' impairments could be expected to cause her alleged symptoms, but he found that the intensity, persistence, and limiting effects that Ms. Vargas described were not entirely consistent with the evidence in the record. *Id.*

In evaluating the medical evidence in the record, the ALJ stated that he gave significant weight to the opinions of State Agency reviewing physicians Dr. Walls and Dr. McWilliams. (AR 20). The ALJ explained that the State Agency physicians were familiar with the Social Security disability standards and their opinions were generally consistent with the other objective medical evidence in the record, including Ms. Vargas' mental status examination. *Id.* The ALJ similarly afforded the opinion of State Agency medical consultant R. Draper, M.D. "great weight," opining that his conclusions are consistent with the other medical evidence in the record and Ms. Vargas' positive response to medication. (AR 17-18). Conversely, the ALJ discredited the medical opinion of State Agency medical consultant A. Mamaril, M.D., affording her opinion "only some weight" because she did not have access to the most recent medical evidence. (AR 17).

None of Ms. Vargas' treating physicians proffered a medical opinion regarding her mental or physical impairments as they relate to her limitations for purposes of

determining disability under the Social Security Act. However, the ALJ discussed the treatment notes and findings of several medical professionals who evaluated Ms. Vargas, including Rachel Casias, P.T.A., Jericho Ayson, P.T., Christopher Swain Loucks, M.D., Jeffery Hebert, M.D., Melissa Selinas, PA-C, and Jessica Johnston, PA-C. (AR 17-19).

After examining Ms. Vargas' medical history and her testimony at the hearing, the ALJ found that Ms. Vargas is unable to perform any of her past relevant work and proceeded to step five of the SEP. (AR 22-23). At this step, the ALJ noted that Ms. Vargas was 48 years old on the alleged disability onset date, and therefore was classified as a "younger individual" in accordance with the Regulations. (AR 22). However, Ms. Vargas subsequently changed age categories and is now correctly classified as an individual "closely approaching advanced age." (AR 23). The ALJ also determined that Ms. Vargas has at least a high school education and is able to communicate in English. *Id.*

Further, the ALJ explained that if Ms. Vargas had the RFC to perform the full range of medium work, a finding of not disabled would be directed by Medical-Vocational Rule 203.29. *Id.* However, the ALJ found that Ms. Vargas' limitations impeded her ability to perform the full range of medium work. *Id.* The ALJ therefore relied on the testimony of the VE to determine applicable jobs Ms. Vargas could perform in the national economy. *Id.* The ALJ noted that the VE testified at the hearing that an individual with Ms. Vargas' same age, education, work experience, and RFC could perform the jobs of dishwasher, laundry worker, and stocker. *Id.* After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted the

testimony of the VE and concluded that, because Ms. Vargas is capable of performing work existing in significant numbers in the national economy, she is not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 24).

## IV.    Analysis

Ms. Vargas presents four arguments in her Motion before the Court. First, Ms. Vargas alleges the ALJ's decision is not supported by substantial evidence because the ALJ did not properly consider evidence of her physical impairments, specifically her chronic back pain and vertigo. (Doc. 22 at 3-9; 20-22). Similarly, Ms. Vargas next claims the ALJ's decision is not supported by substantial evidence because he did not properly consider evidence of her mental and emotional impairments, specifically her excessive crying and anxiety. *Id.* at 10-14, 18-20. In her third argument, Ms. Vargas contends the ALJ failed to include, or explain the exclusion of, several of the limitations assessed by State Agency physicians Dr. Walls and Dr. McWilliams. *Id.* at 14-17. Finally, Ms. Vargas argues the ALJ's reliance on the VE's testimony was improper because the testimony was based on an incorrect RFC assessment. *Id.* at 22-24.

In response, the Commissioner claims the ALJ's RFC assessment properly accounts for Ms. Vargas' complaints of back pain, vertigo, anxiety, and crying spells. (Doc. 24 at 8). In addition, the Commissioner contends the ALJ's findings were consistent with Dr. Walls' opinions, and therefore his failure to specifically address all of Dr. Walls' report was harmless error. *Id.* at 13. Finally, the Commissioner concludes, there is no legally reversible error illustrated by Ms. Vargas' step-five argument because the ALJ's decision is supported by substantial evidence. *Id.* at 17.

*A. The ALJ's Analysis of Ms. Vargas' Physical Limitations*

Ms. Vargas first contends "[t]here is not substantial evidence to support the ALJ's finding regarding the physical requirements of medium level work." (Doc. 22 at 9). Specifically, Ms. Vargas argues the ALJ incorrectly relied on the medical opinion of Dr. Draper because evidence dated after his report reveals that she was more limited than Dr. Draper initially opined. (Doc. 22 at 4). In response, the Commissioner posits that the additional evidence does not undermine Dr. Draper's findings, but "rather it merely shows that [Ms. Vargas] continued to complain of back pain." (Doc. 24 at 8). In addition, the Commissioner highlights evidence supporting the ALJ's decision and notes the conflicting reports found in the record. (Doc. 24 at 9-10).

*1. The ALJ's Reliance on Dr. Draper's Report*

First, Ms. Vargas argues the ALJ's RFC assessment regarding her physical limitations is not supported by substantial evidence because the ALJ relied on the outdated medical opinion of Dr. Draper. (Doc. 22 at 9). An ALJ's decision is based on substantial evidence if "a reasonable mind might accept [it] as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted). Upon review, the court cannot "reweigh the evidence nor substitute its judgment for that of the agency." *Bernal v. Brown*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). Indeed, the court should not "displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Here, the ALJ gave "great weight" to the medical evaluation of Dr. Draper, finding that his report was consistent with Ms. Vargas' ability to perform medium level work. (AR 17-18). Further, the ALJ explained, Dr. Draper is familiar with Social Security disability standards, he conducted a "longitudinal review" of the record, and his conclusions were consistent with the other medical evidence presented. *Id.* The ALJ noted that Dr. Draper's report was dated September 14, 2015 – rendering his opinion nearly two years old at the time of the ALJ's decision. (AR 17).

The ALJ adopted Dr. Draper's report for legitimate reasons which he adequately set forth in his opinion – consistency with the longitudinal record and familiarity with the Social Security disability standards. (AR 17-18). Further, the ALJ reviewed considerable additional evidence, dated both before and after Dr. Draper's September 2015 report. (AR 17-20). In particular, the ALJ considered treatment notes pertaining to Ms. Vargas' complaints of back pain dated: November 7, 2014; November 24, 2014; December 18, 2014; December 21, 2014; March 3, 2014; March 3, 2015; June 3, 2015; April 7, 2016; June 14, 2016; and September 6, 2016. (AR 17-18).

The ALJ was permitted to rely on Dr. Draper's opinion as long as his reliance was supported by substantial evidence. *See Tarpley v. Colvin*, 601 Fed. App'x. 641, 644 (10th Cir. 2015) (unpublished). Although Dr. Draper's report was from 2015, the ALJ also considered other evidence that supported Dr. Draper's opinion, evidence that both pre-dated and post-dated his findings. In addition, no other medical source contradicted Dr. Draper's conclusions regarding Ms. Vargas' physical limitations. While this fact alone is not dispositive, *see* 20 C.F.R. § 404.1527, it is instructive as to why the ALJ relied on Dr. Draper's report – because it was the only report which opined on Ms.

Vargas' physical limitations as they relate to a finding of disability under the Social Security Act. Thus, by conducting a thorough review of the evidence in the record, including both Dr. Draper's report and several other pertinent medical records, the ALJ's decision to utilize the report is supported by substantial evidence.

### 2. *Substantial Evidence Supporting the ALJ's Decision*

Next, Ms. Vargas highlights "other evidence that belies the ALJ's finding that Ms. Vargas can perform all activities." (Doc. 22 at 9). Specifically, Ms. Vargas cites to several treatment notes to illustrate the severity of her back pain and contends that her vertigo renders her more limited than the ALJ opined. (Doc. 22 at 4-7) (citing AR 338-348, 350-362, 442-444, 555-559, 584, 600-610, 648-672, 748-759, 813-816, 844-847); (Doc. 22 at 20-22). In response, the Commissioner argues that no other doctor proffered a medical opinion finding that Ms. Vargas was "more limited" by her physical impairments and the ALJ's conclusion was therefore reasonably supported. (Doc. 24 at 10-11).

While the Court must review "anything that may undercut or detract from the ALJ's findings," *Grogan*, 399 F.3d at 1262, it must also be wary that the ALJ is not required to discuss or explain "every piece of evidence" in the record, *Watts v. Berryhill*, 705 Fed.Appx. 759, 762 (10th Cir. 2017) (unpublished) (citations omitted). There is no requirement that an ALJ point to "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). In addition, for an ALJ's decision to be affirmed, there must be "more than a scintilla, but less than a preponderance" of evidence supporting his reasoning. *Lax*, 489 F.3d 1080, 1084 (10th

Cir. 2007) (citations omitted). As such, merely drawing two inconsistent conclusions from the facts does not render the ALJ's decision improper. *Id.*

Here, the ALJ noted over ten different medical providers who proffered an opinion regarding Ms. Vargas' complaints of back pain. Specifically, the ALJ discussed the treatment notes and medical reports of: Dr. Mamaril ("Claimant's back condition is a non-severe impairment"), (AR 17); Rachel Casias, PTA (rating Ms. Vargas a "70.83 percent 'disability' on the Roland-Morris 'disability' questionnaire"), (AR 18); Jericho Ayson, PT ("[Ms. Vargas'] examination results show[] good tolerance of activity and trunk motions"), *id.*; Dr. Loucks (noting "paralumbar tenderness"), *id.*; Dr. Hebert (explaining Ms. Vargas' radiology report), *id.*; Melissa Selinas, PA-C ("Claimant had a steady gait. There was no lumbar tenderness and no bony tenderness…"), *id.*; Andrei Marchenko, CNP ("Claimant had an assessment of low back pain. However, the examination showed no joint deformities and good range of motion in all joints."), *id.*; Jessica Johnston, PA-C ("Claimant ambulated with ease and transitioned from sitting and standing again with ease."), (AR 19); and Stefan Hardy, DPT ("Claimant reported back pain that was all over."), *id.* In addition to detailing Ms. Vargas' medical records, the ALJ also discussed her testimony at the hearing, (that "her pain does not limit her ability to perform activities of daily living or recreational activities"), (AR 18), and her daily function report, (AR 26).

Importantly, the ALJ did not ignore the evidence that undermined a finding of nondisability. For example, the ALJ discussed reports of Ms. Vargas': 70.83 percent disability rating on the Roland-Morris questionnaire, (AR 18); "pain rating of 10/10," *id.*; assessments of low back pain and tenderness with palpations, *id.*; personal

descriptions of pain throughout her entire back, (AR 19); hypersensitivity to light touch, *id.*; and her difficulty performing activities in her daily life, *id.* The ALJ therefore analyzed not only the evidence that supported his finding of nondisability, but also contradictory evidence that was unfavorable to his conclusion.

In addition, the ALJ provided appropriate explanations for rejecting the medical opinions that he did not incorporate in his final RFC assessment or otherwise balanced the contrary findings with the record as a whole. For example, the ALJ compared Ms. Vargas': high score on the Roland-Morris disability scale with her conflicting examination results and personal testimony, (AR 18); reports of extreme pain on November 7, 2014 with her November 24, 2014 report that her pain was "mellow and that she performed cooking and cleaning over the weekend," *id.*; and her complaints of back pain "all over" with her high strength testing scores, (AR 19).

Notably, the medical notes and treatment findings that Ms. Vargas contends the ALJ should have considered do not contain any additional information that the ALJ failed to address. Rather, the medical notes Ms. Vargas highlights are related to her consistent reports of back pain, an issue which the ALJ discussed on multiple occasions in his analysis. *See e.g.*, (AR 18) ("Claimant had constant aching pain in the mid-back and low back […] with a pain rating of 10/10."); (AR 19) ("Stefan Hardy, DPT revealed that the Claimant reported back pain that was all over."). Thus, although the ALJ did not repeat each medical finding where a physician noted Ms. Vargas' back pain, he did not omit evidence of additional symptoms or impairments which would have altered the limitations reflected in her RFC assessment.

While Ms. Vargas argues the ALJ should have discussed additional treatment notes and medical findings, the ALJ is not required to discuss her full medical transcripts. *See Watts*, 705 Fed. Appx. at 762 (explaining that while the ALJ's opinion must demonstrate that he considered "all of the evidence," he is not required to "discuss every piece of evidence."). By examining evidence that supported both his finding of nondisability, and contradictory evidence that cut-against his conclusions, the ALJ demonstrated that he considered "all of the evidence," s*ee id.*, and a "formalistic factor-by-factor recitation of the evidence," *Keyes-Zachary*, 695 F.3d at 1166, was not necessary.

Where, as here, the Court can follow the ALJ's reasoning in conducting its review, and it can determine that the correct legal standards were applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The Court "must exercise common sense" and "cannot insist on technical perfection." *Id.* Thus, the Court finds that the ALJ sufficiently explained his RFC determination regarding Ms. Vargas' physical limitations and supported his decision with substantial evidence.

B. *The ALJ's Analysis of Ms. Vargas' Mental Limitations*

Next, Ms. Vargas posits that the ALJ's decision is not supported by substantial evidence because her anxiety prevents her from "concentrating, attending, and having even occasional social interactions at work." (Doc. 22 at 10). In addition, Ms. Vargas contests the ALJ's analysis of her GAF scores, arguing the ALJ was "playing doctor" when he erroneously afforded the scores "little weight." *Id.* at 11-13. In response, the Commissioner argues that Ms. Vargas "does not offer any evidence showing that she

was more limited than the ALJ found." (Doc. 24 at 11). Further, the Commissioner claims the ALJ reasonably afforded Ms. Vargas' GAF scores little weight because they were inconsistent with the other medical evidence provided. *Id.*

1. *Substantial Evidence Supporting the ALJ's Decision*

First, Ms. Vargas argues the ALJ's RFC assessment regarding her mental limitations is not supported by substantial evidence because contradictory evidence is apparent in the record. The ALJ noted several medical findings regarding Ms. Vargas' anxiety and the associated symptoms. Specifically, the ALJ discussed the findings and treatment notes of: Dr. Walls ("Dr. Walls opined that the Claimant is able to maintain concentration, persistence, or pace with occasional interruptions due to anxiety when compliant with treatment advice."), (AR 19); Dr. McWilliams (describing Ms. Vargas' mental limitations), (AR 20); Dr. Loucks ("[T]he Claimant complained of anxiety and panic attacks"), *id.*; Mohamad Hadi Khafaja, M.D. ("[T]he Claimant appeared only mildly anxious on examination."), *id.*; Julia A. Tenbrook, CNP ("[T]he Claimant's behavior was much more appropriate today."), *id.*; Brandon Yarns, M.D. ("[T]he Claimant had a chief complaint of anxiety."), (AR 21); Stephen Frederick Lewis, M.D. (explaining Ms. Vargas' behavior at the time of her examination), *id.*; and Ruth Walker, LCSW ("the Claimant had severe panic attacks and [...] was extremely depressed."), *id.* In addition, the ALJ considered Ms. Vargas' daily activities and her prior attempted treatments. (AR 21-22).

The ALJ did not ignore the evidence that undermined his conclusions. Rather, he provided appropriate explanations for rejecting the medical evidence that he did not incorporate in his final RFC assessment. For example, the ALJ opined that while Ms. Vargas complained of a "torrential cycle of anxiety attacks," she "appeared only mildly

anxious on examination." (AR 20). In addition, he noted that although "her mood was depressed and her affect […] tearful, her thought process was goal directed and her thought content was unremarkable." (AR 21). The ALJ analyzed not only the evidence that supported his finding of nondisability but also contradictory evidence, illustrating his thorough review of Ms. Vargas' treatment records.

Similarly, Ms. Vargas argues that the ALJ failed to consider the effects of her crying spells, a symptom of her anxiety. (Doc. 22 at 17-20). However, Ms. Vargas does not direct the Court to any additional evidence that the ALJ omitted from his analysis which would have further limited her RFC assessment or otherwise changed the ALJ's decision. Rather, Ms. Vargas highlights several notations where her physicians indicated that she cried during her office visits. *Id.* The ALJ discussed Ms. Vargas' crying spells in his analysis, *see e.g.*, (AR 21) ("[I]nappropriate range from tearfulness and laughter"); *id.* ("She cried at times but also laughed."); *id.* ("She cried during the session."), and Ms. Vargas has failed to present any treatment notes that differ from those discussed by the ALJ which would alter her RFC assessment.

Based on the foregoing, the ALJ's reasoning is not "overwhelmed by other evidence in the record" or supported by a "mere scintilla of evidence." *Langley*, 373 F.3d at 1118. Rather, the Court can follow the ALJ's reasoning and identify the evidence that both supported his opinion and negated his conclusions. For these reasons, the ALJ's opinion regarding Ms. Vargas' mental limitations is supported by substantial evidence.

### 2. The ALJ's Rejection of Ms. Vargas' GAF Scores

Ms. Vargas also contends the ALJ should have considered her GAF scores when formulating her RFC assessment because other evidence in the record supports the

scores' veracity. (Doc. 22 at 12-13). The Commissioner responds by discrediting the reliability of the GAF scoring system and declaring that the ALJ properly supported his decision to give the GAF scores limited weight. (Doc. 24 at 12).

When an ALJ rejects a medical opinion, he must provide good reasons for the weight he ultimately assigns. *Watts*, 705 Fed.Appx. at 762. It is not within the purview of the Court to substitute its judgment for that of the ALJ, nor can it reweigh the evidence that the ALJ relied on. *Doyal*, 331 F.3d at 760. Rather, the Court's function is to assure that the ALJ supported his decision with appropriate record evidence and his reasoning is founded in substantial evidence. *See Lax*, 489 F.3d at 1084.

Here, as documented by the ALJ, Ms. Vargas was assessed: a GAF score of 50 on April 21, 2014 ("A GAF score of 41 to 50 is consistent with serious symptoms or any serious impairment in social, occupational, or school functioning.") (AR 20, note 1) (*citing Diagnostic and Statistical Manual of Mental Disorders: DSM-iv*, APA 1994); a GAF score of 50 on April 22, 2014; a GAF score of 49 on May 16, 2014; a GAF score of 40 on February 13, 2015 ("A GAF score of 31 to 40 is consistent with some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.") (AR 21, note 2) (*citing Diagnostic and Statistical Manual of Mental Disorders: DSM-iv*, APA 1994); and a GAF score of 21 on July 15, 2015 ("A GAF score of 21 to 30 is consistent with behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment [e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation] or inability to function in all areas, [e.g., stays in bed all day, no

job, no home, or friends.]") (AR 21, note 3) (*citing Diagnostic and Statistical Manual of Mental Disorders: DSM-iv*, APA 1994).

The ALJ rejected Ms. Vargas' GAF scores because they were inconsistent with her mental status examinations. (AR 21). In his analysis, the ALJ set forth the definitions provided in the *Diagnostic and Statistical Manual of Mental Disorders: DSM-iv* for Ms. Vargas' assigned GAF scores, and compared these definitions with the symptoms described in Ms. Vargas' medical reports. (AR 21, note 2, 3). The ALJ delineated each medical opinion that he found inconsistent with Ms. Vargas' GAF scores, explaining why he gave the scores "little weight." *Id.* As such, the ALJ sufficiently explained his reasoning for rejecting Ms. Vargas' GAF scores.

For these reasons, the Court finds that the ALJ adequately explained his RFC determination regarding Ms. Vargas' mental limitations and supported his decision with substantial evidence.

C. *The ALJ's Consideration of Dr. Walls and Dr. McWilliams' Medical Opinions*

Ms. Vargas next argues the ALJ did not include several of the limitations found by Dr. Walls and Dr. McWilliams in her RFC assessment. (Doc. 22 at 14-17). Specifically, Ms. Vargas contends that the ALJ did not include, or otherwise discuss the exclusion of, the following limitations: the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (the "ability to complete a normal workweek"); the ability to interact appropriately with the general public; and the ability to carry out detailed instructions. (Doc. 22 at 15-16).

In response, the Commissioner argues that Ms. Vargas' limitation in performing

only two- and three-step instructions, coupled with her ability to perform only unskilled work, accounts for Dr. Walls and Dr. McWilliams' prescribed limitations. (Doc. 24 at 14). As such, the Commissioner contends the ALJ did not commit reversible error by not specifically addressing each limitation assessed by the State Agency physicians because their findings were otherwise incorporated in the final RFC determination. *Id.* at 13.

Although it is not required that an ALJ discuss every piece of evidence, he is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Of course, it is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, the ALJ is required to weigh the medical source reports and provide "appropriate explanations" for accepting or rejecting the opinions. SSR 96-5p, 1996 WL 374183, at *5.

To aid in the ALJ's analysis, the Regulations set forth the following factors that should be considered when assessing the value of each medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c); *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (the "20 C.F.R. §§ 404.1527, 416.927 factors"). While not every factor will be applicable in every case, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In addition, the Commissioner may not rationalize the ALJ's decision post hoc or attempt to supply possible reasons for the ALJ's decision after the fact. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted). It follows then, that the court may not make a post hoc effort to "salvage [an] ALJ's decision" and judicial review remains limited to the reasons provided in the ALJ's decision. *Robinson*, 366 F.3d at 1084-85; *Carpenter*, 537 F.3d at 1267 (citation omitted). Thus, this Court may only consider the reasoning proffered by the ALJ himself, and not any post hoc rationale provided by the Commissioner. *Robinson*, 366 F.3d at 1084 (citations omitted).

On March 17, 2015, Dr. Walls reviewed the evidence of record, (AR 79-100), and completed a Disability Determination Explanation, evaluating both Ms. Vargas' claims for supplemental security income, (AR 79-89), and disability insurance benefits, (AR 90-100). In his Mental Residual Functional Capacity Assessment, Dr. Walls opined that Ms. Vargas is moderately limited in her abilities to: maintain attention and concentration for extended periods; complete a normal workweek; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 85-86). In addition, Dr.

Walls further opined that Ms. Vargas is markedly limited in her ability to interact appropriately with the general public. *Id.* Dr. Walls then concluded that, in reviewing Ms. Vargas' medical history and the relevant evidence in the record, Ms. Vargas is not disabled as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 100).

Dr. McWilliams reviewed Dr. Walls' report on September 2, 2015 and reconsidered the merits of Ms. Vargas' claims. (AR 121). Dr. McWilliams concluded that Ms. Vargas was only moderately limited in her ability to interact appropriately with the general public, not markedly limited as Dr. Walls had opined. (AR 127). Dr. McWilliams additionally found that Ms. Vargas was moderately limited in her ability to carry out detailed instructions. (AR 126). In all other respects, Dr. McWilliams affirmed the limitations prescribed in Dr. Walls' Mental Functional Capacity Assessments. (AR 126-27). Dr. McWilliams similarly concluded that Ms. Vargas is not disabled as defined by the Social Security Act. (AR 129).

In his analysis of the State Agency physicians' reports, the ALJ stated that he afforded their medical opinions great weight. (AR 20). Specifically, the ALJ opined that the State Agency physicians' opinions were "generally consistent" with the other objective medical evidence in the longitudinal record. *Id.* In addition, the ALJ listed each of the limitations prescribed by the physicians and the severity delineated for each finding. (AR 19-20).

Ms. Vargas does not dispute that the ALJ's RFC assessment incorporates several of the limitations recognized by the State Agency physicians, including her abilities to: maintain attention and concentration for extended periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

accept instructions and respond appropriately to criticism from supervisors. (Doc. 22 at 15-17). Rather, Ms. Vargas contends her RFC assessment does not account for her limited ability to complete a normal workweek and carry out detailed instructions. *Id.* at 15-16. In addition, Ms. Vargas claims the ALJ should have limited her interactions with the general public to "none at all" instead of "seldom." (Doc. 22 at 15).

> 1. *Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods*

In Dr. McWilliams' assessment, he notes Ms. Vargas' moderate limitation in completing a normal workweek. (AR 126-27). Indented immediately following this notation, the instructions request that Dr. McWilliams "explain in narrative form" Ms. Vargas' "sustained concentration and persistence capacities." *Id.* In response to this instruction, Dr. McWilliams transcribed that Ms. Vargas can "carry-out 2-3 step instructions consistently." *Id.* The parties' dispute centers around the relationship between Dr. McWilliams' narrative explanation and his finding of Ms. Vargas' moderate limitation in completing a normal workweek.

If a physician provides a narrative in his assessment which "adequately encapsulates the moderate limitation in [the claimant's] ability," then it may serve as the "functional manifestations of that […] moderate limitation." *Carver v. Colvin*, 600 Fed.Appx. 616, 619 (10th Cir. 2015) (unpublished). The narrative can therefore illustrate "the effects of the moderate limitation" or otherwise explain the functional capacities of the claimant. *Id.* Specifically, if the narrative stems from a "general moderate limitation," it may be viewed as a "more-precise" explanation of the claimant's functional limitation. *Id.*

Here, the placement of this narrative in Dr. McWilliams' report – immediately following his finding that Ms. Vargas is moderately limited in her ability to complete a normal workweek – demonstrates that the narrative serves as a more refined and precise articulation of her limitation. This conclusion is illustrated by reading the moderate limitation of completing a normal workweek as consisting of two separate clauses: (1) the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms; and (2) the ability to perform at a consistent pace without an unreasonable number and length of rest periods. The first clause speaks to Ms. Vargas' ability to sustain concentration – i.e., not be interrupted from her psychological symptoms – while the second clause relates to her persistent capacity to work – i.e., her ability to perform work at a consistent pace.

The language employed in this limitation is mirrored in the explanatory question immediately following it, instructing Dr. McWilliams to explain in narrative form Ms. Vargas' "sustained concentration and persistence capacities." When the two questions are therefore read consecutively, the narrative explanation is understood as explaining Ms. Vargas' capacity to concentrate and maintain a consistent pace. Accordingly, the ALJ was permitted to rely on this narrative as detailing Ms. Vargas' functional capacity in her ability to complete a normal workweek. As such, Ms. Vargas' RFC correctly incorporates this limitation by limiting her to two- and three- step instructions.

### 2. Ability to follow detailed instructions

Next, Ms. Vargas contends the ALJ failed to incorporate her moderate limitation in following detailed instructions. (Doc. 22 at 15-17). In response, the Commissioner argues that Ms. Vargas' RFC assessment incorporates this limitation by limiting her to

only two- and three- step instructions, "limited interaction with others," and "unskilled work." (Doc. 22 at 14).

In his Mental Residual Functional Capacity Report, Dr. McWilliams found that Ms. Vargas was "moderately" limited in her ability to carry out detailed instructions. (AR 126). Dr. Walls, however, opined that Ms. Vargas was "not significantly" limited in her ability to follow detailed instructions. (AR 86). In addition to citing the state agency physicians' reports, the ALJ noted that Ms. Vargas reported that "although she does not follow written instructions well, she said she follows spoken instructions 'OK'." (AR 15).

The Tenth Circuit recently addressed this issue in 2016, when an ALJ failed to include the claimant's marked limitation in carrying out detailed instructions in his final RFC assessment and never specifically addressed its exclusion. *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016). The Tenth Circuit opined that by limiting the claimant to unskilled work, the ALJ "effectively accounted for" the claimant's limitation in carrying out detailed instructions. *Id.* As such, the *Nelson* court concluded, the ALJ was not required to discuss the exclusion of this limitation because unskilled work does not require the claimant to carry out detailed instructions. *Id.*

Notably, the circumstances in which the ALJ may omit specific limitations in his RFC assessment by limiting the claimant to simple or unskilled work have been narrowly defined. Indeed, "such a vague catch-all term" is generally not "sufficient to capture the various fundamentally distinct mental limitations" recognized by a medical professional. *See Chapo v. Astrue*, 682 f.3d 1285, 1290 n.3 (10th Cir. 2012). In order to withstand judicial scrutiny, the ALJ must do "much more than merely limit [the claimant] to simple work." *See Oceguera v. Colvin*, 658 Fed.Appx. 370, 374 (10th Cir. 2016)

(unpublished).

In cases where a restriction limiting the claimant to simple work has been found to be sufficient, the limitations omitted from the ALJ's analysis are directly correlated to the claimant's ability to perform more demanding work. For example, in *Smith v. Colvin*, the Tenth Circuit concluded that the claimant's limitation in managing social interactions and engaging in complex work was adequately accounted for by the ALJ's assessment that the claimant could not engage in face-to-face contact and could only complete simple, repetitive, routine tasks. 821 F.3d 1264, 1269 (10th Cir. 2016). Similarly, in *Lee v. Colvin*, the ALJ did not discuss the claimant's limitations in performing complex tasks or meaningfully interacting with supervisors or peers. 631 Fed.Appx. 538, 540-41 (10th Cir. 2015) (unpublished). However, the *Lee* court concluded that the ALJ's RFC assessment limiting the claimant to unskilled work accounted for these limitations that he failed to mention in his analysis. *Id.*

Put simply, the *Lee* court found that unskilled work inherently implies not performing complex tasks or having meaningful interactions with supervisors or peers, and thus the ALJ had incorporated those limitations in the RFC assessment. *Id.* Likewise, here, unskilled work inherently implies not being able to follow detailed instructions. This conclusion is illustrated by the definition of "unskilled work" as defined in SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). The first "mental activities" generally required to complete unskilled work are the abilities to "understand[], remember[], and carry[] out simple instructions." *Id.* Thus, by limiting Ms. Vargas to unskilled work, the ALJ has inherently incorporated her limited ability to follow detailed instructions into the final RFC assessment.

### 3. Ability to interact with the general public

Finally, Ms. Vargas contends the ALJ should have limited her interactions with the general public to "none at all" instead of only "seldom." (Doc. 22 at 15). In response, the Commissioner argues the ALJ was not required to address Ms. Vargas' limitation in interacting with the general public because "the ALJ ultimately found that she could perform only unskilled work, which involves working with things rather than data *or people*." (Doc. 24 at 13) (emphasis in original).

In his assessment, Dr. Walls opined that Ms. Vargas was "markedly" limited in her ability to interact with the general public. (AR 86). Upon review of Ms. Vargas' medical records, Dr. McWilliams opined that she was "moderately" limited in her ability to interact with the general public. (AR 126). In addition, Dr. McWilliams noted that Ms. Vargas' "social interaction capacities and limitations" were that she "can deal with the public and get along with people at work if the contact is brief." (AR 127).

There is no *per se* rule that a marked limitation in interacting with the public automatically amounts to the claimant being limited to no contact at all with the general public. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Rather, the Social Security Program Operations Manual System (POMS") defines "markedly limited" as "when the evidence supports the conclusion that the individual cannot usefully perform or *sustain* the activity." POMS § DI 24510.063(B)(3) (emphasis added). Thus, limiting Ms. Vargas to "seldom" contact with the general public accounts for a marked limitation in her difficultly "sustain[ing]" this conduct. *See also* (AR 14) ("A marked limitation

means functioning in this area independently, appropriately, effectively, and on *a sustained basis* is seriously limited.") (emphasis added).

In addition, while the ALJ did not specifically analyze Dr. Walls and Dr. McWilliams' conflicting medical findings, he did discuss Ms. Vargas' ability to interact with others. *See* (AR 15). Specifically, the ALJ stated:

> in interacting with others […] the Claimant has moderate limitations. Ms. Vargas stated in her Function Report that she has problems getting along [sic] family, friends, neighbors, or others, since she was 'really emotional right now.' She stated she does not spend time with others or go places on a regular basis. However, she stated she has no problems getting along with authority figures.

(AR 15) (citations omitted). Further, the ALJ noted that "Dr. Walls opined that the Claimant is markedly limited in her ability to interact appropriately with the general public. However, Dr. Walls did not assess significant limitations in any other areas." (AR 20). The ALJ's use of "however" in this sentence appears to question Dr. Walls' finding that Ms. Vargas is limited in her ability to interact appropriately with the general public because he did not assess a marked limitation in any other area of her social functioning capabilities.

In sum, the ALJ's discussion of Ms. Vargas' limitation in interacting with the general public, coupled with the incorporation of this limitation in the RFC assessment, is sufficient to support the ALJ's conclusion. Further, the ALJ has adequately incorporated Ms. Vargas' limitations in completing a normal workweek and carrying out detailed instructions. Therefore, the Court finds that the ALJ properly considered and incorporated the medical opinions of Dr. Walls and Dr. McWilliams.

### 3. *The VE's Reliance on the ALJ's RFC Assessment*

Finally, Ms. Vargas contends the ALJ's reliance on the VE's testimony was

erroneous because the ALJ's RFC assessment was incorrect. (Doc. 22 at 22-23). In addition, Ms. Vargas claims the ALJ's failure to elicit a foundation for the VE's testimony constituted reversible error. (Doc. 22 at 23-24). The Commissioner responds by asserting that the ALJ correctly crafted Ms. Vargas' RFC assessment and the VE's reliance on her RFC was therefore valid. (Doc. 24 at 16-18). Next, the Commissioner claims that although the ALJ did not ask the VE about the foundation and consistency of her testimony, his failure to do so was harmless error. *Id.*

As set forth above, the ALJ did not err in crafting Ms. Vargas' RFC assessment and his decision is supported by substantial evidence. Therefore, the VE's reliance on Ms. Vargas' RFC assessment, as it was presented to her at the hearing, was not erroneous. As such, the ALJ did not err in relying on the VE's testimony to establish a finding of nondisability.

Next, Ms. Vargas is correct that the ALJ has an "affirmative responsibility to ask about any possible conflict" in the evidence presented regarding her limitations and the information provided in the Dictionary of Occupational Titles ("DOT"). *See* SSR 00-4p, 2000 WL 1898704, at *4. However, the ALJ's failure to establish this foundational evidence was harmless error because Ms. Vargas has not alleged any conflict nor does it appear that any conflict exists. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony […] and the job descriptions of the DOT, we conclude that this error was harmless because there were no conflicts."). As such, the ALJ's error in not inquiring about any potential conflicts was harmless. *See id.* at 1174.

### V.     Conclusion

For the foregoing reasons, the Court finds that the ALJ did not commit the errors alleged by Ms. Vargas. In addition, the Court finds that substantial evidence supports the ALJ's determinations challenged by Ms. Vargas.

**IT IS THEREFORE ORDERED** that Ms. Vargas' *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 22), is **DENIED** and this case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE